IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

DEEP NINES, INC.. §
§
    *Plaintiff*, §
§    Civil Action No. 9:09-CV-89
v. §
§
MCAFEE, INC. and SECURE COMPUTING §    JUDGE RON CLARK
CORP., §
§
    *Defendants*. §

## MEMORANDUM AND ORDER FINDING CLAIM 7 INVALID AS INDEFINITE

Plaintiff Deep Nines, Inc. filed suit against Defendants McAfee, Inc. and Secure Computing Corporation, claiming infringement of U.S. Patent No. 7,058,976 ("the '976 patent"). The court conducted a *Markman* hearing to assist in interpreting the meaning of the disputed claim terms.[1] Having carefully considered the patent, the prosecution history, the parties' briefs, and the arguments of counsel, the court concludes that claim 7 impermissibly includes a method step in an apparatus claim, and is indefinite.

### I. BACKGROUND

The relevant background of the case and its procedural history are set out in detail in accompanying Order Construing Claim Terms of United States Patent No. 7,058,976. The

---

[1]The transcript of the hearing contains a number of representations and agreements of counsel and their expert's answers to technical questions from the court, all of which will not be repeated here, but which assisted the court in reaching the conclusions set out in this Order. This Order governs in the event of any conflict between the Order and the court's preliminary analysis at the hearing. The transcript will be cited as Tr. at __: __. To clarify arguments and obtain agreement where possible, the court proposed certain definitions during the hearing, which were displayed on-screen to counsel for discussion and revision. They are part of the record and will be cited as Court Ex.___.

'976 patent describes systems and methods for detecting and preventing attacks on a communications network. These systems and methods consist of a firewall, which will receive and discard data based on a pre-determined set of rules, and an intrusion detection system ("IDS") that will alert the system administrator, block data, and disconnect from the remote source of the hostile attack.

## II. STANDARD OF REVIEW

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-91, 116 S. Ct. 1384, 1395-96 (1996) ("*Markman II*"); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998). A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims" *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005)

The words of a claim are generally given their ordinary and customary meaning. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313. Analyzing how a person of ordinary skill in the art understands a claim term is the starting point of claim interpretation. *Id.*

A person of ordinary skill in the art is "deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Where a claim term has a particular meaning in the field of the art, the court looks to "'those sources available to the public to show what a person of skill in the art would have understood [the] disputed claim language to mean.'" *Id.* at 1314 (quoting *Innova*, 381 F.3d at 1116). Those sources include "'the words of the claims

themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id.* (quoting *Innova*, 381 F.3d at 1116).

A claim term takes on its ordinary and accustomed meaning unless the patentee demonstrated an express intent to impart a novel meaning by redefining the term "with reasonable clarity, deliberateness, and precision" in the patent specification or prosecution history. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). The patentee may demonstrate an intent to deviate from the ordinary meaning "by redefining the term or by characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Id.* at 1327. If the patentee clearly intended to provide his own definitions for claim terms, the "inventor's lexicography governs." *Phillips*, 415 F.3d at 1316.

### III. PERSON OF ORDINARY SKILL IN THE ART

The parties agreed at the hearing that the following definition should be used:

> The person of ordinary skill in the art is someone with the equivalent of a "four year" degree from an accredited institution (usually denoted in this country as a B.S. degree) with a concentration of courses covering computer programming, networking, and network security. Depending on the institution, the major field of study might be denoted as "electrical engineering," "computer science," or the like. The individual would also have four years of experience in a related field. Additional degrees might substitute for experience, while significant experience in the development and use of computer networks and/or security systems might substitute for formal education.

*See* Tr. at 5:4-22 [Doc. # 132].

# IV. THE DISPUTED CLAIM TERM

**"Acting on the data representing text identified as hostile in order to prevent an attack." Found in '976 patent, claim 7**.

The "gateway system" of claim 7 is described as comprising:

1. "A firewall for receiving data . . ." 10:32;

2. "an intrusion detection system coupled to the firewall . . ." 10:35; and

3. "**acting on the data representing text identified as hostile in order to prevent an attack** . . ." 10:43-44.

Deep Nines contends no construction is necessary. Secure argues that claim 7 is indefinite because the third limitation, which begins with the term in dispute, consists of a method step in an apparatus claim, thus impermissibly mixing more than one class of patentable subject matter.

Claim 7 is a system claim and may not include a method step

A patent claim that covers both an apparatus and a method of using that apparatus is indefinite under 35 U.S.C. § 112, ¶ 2. *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). However, "apparatus claims are not necessarily indefinite for using functional language," even where the claim is not in means-plus-function format.[2] *Microprocessor Enhancement Corp. v. Texas Instruments, Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008) (citing *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1363 (Fed. Cir. 1999) (where functional language was analyzed as an additional limitation to an apparatus claim for an in-line skate)).

---

[2]Neither Deep Nines nor Secure argues that this claim term is a means-plus-function limitation.

In *Microprocessor*, the court indicated that the key question might be whether the limitation is directed to using the claimed apparatus (meaning it is a method step) or whether the limitation is instead a functional description of certain features of the claimed apparatus (meaning it is not a method step). *See* 520 F.3d at 1374. In that case, the apparatus claim "was clearly limited to a pipelined processor possessing the recited structure and *capable* of performing the recited functions," and was therefore not indefinite. *Id.* at 1375 (emphasis in original).

It is undisputed that claim 7 is an apparatus or system claim, not a method claim. *See, e.g.*, '976 patent, claim 7, 10:30-31 ("A gateway system for detecting attacks on a network, comprising . . ."); claim 8, 10:51 ("The system recited in claim 7 . . . . "). More specifically, claim 7 describes a system comprised of three elements:

> A gateway system for detecting attacks on a network comprising:
>
> > a firewall for receiving data . . . ;
> >
> > an intrusion detection system coupled to the firewall . . . ; and
> >
> > acting on the data representing text identified as hostile in order to prevent an attack . . . " '976 patent, 10:30-50.

Grammatically, the third element of claim 7 is a separate step

The third element of the claim describes an action—"acting on the data . . ." The question is whether this is an impermissible method step, or merely a functional limitation on the IDS described in the second element of the claim. The court begins by analyzing the grammar and punctuation because, although those responsible for drafting important documents can make mistakes, one begins with the modest expectation that the words of a

claim say what the author wanted them to say. *See, e.g., SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 885 (Fed. Cir. 2004) (citing William Strunk, Jr. & E.B.White, <u>The Elements of Style</u> (4th ed. 2000) to support a grammatical interpretation); *Credle v. Bond*, 25 F.3d 1566, 1571-72 (Fed. Cir. 1994). Use of a colon following "comprising"and semicolons following each separate paragraph denotes separation of distinct items in a series. Bryan Garner, <u>The Redbook: A Manual on Legal Style</u> 14 (2d ed. 2006).

<u>There is no basis to ignore the grammatical construction and instead read the term as a functional limitation</u>

Deep Nines now argues that the patentee intended for the "acting on" step to be subsumed in the second claim limitation, which relates to the IDS. That is not how the claim reads. Deep Nines nevertheless suggests that a person of ordinary skill in the art would understand that the only structure performing the "acting on the data" function is the IDS in item 2 above ("an intrusion detection system coupled to the firewall . . . ."). Therefore, "acting on the data " would be understood as a functional limitation of the IDS.

While a general rule is that, if possible, a construction should be chosen that preserves a claim's validity, the rule applies only if the court concludes, after applying all available claim construction tools, that the claim is ambiguous. *Phillips*, 415 F.3d at 1327. Courts do not redraft a claim with a plain meaning to make it valid or operable. *Id.* For example, a plainly written claim would not be reworded just because it achieved the absurd result of burnt dough. *See Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004)

This is not a case involving obvious typographical errors such as missing letters or punctuation. Claim 7 could be considered ambiguous only if the person of ordinary skill in the

6

art is assumed to ignore standard rules of grammar and punctuation when interpreting a claim. In claim 12, which is stated to be a method claim, the patentee used the same colon and semi-colon structure to list "acting on the data representing text identified as hostile . . . ." as one of the method steps. '976 patent, 10:66-11:31. On the other hand, claim 13, which describes a "system," uses a colon after comprising, but does not use a semi-colon to set off the "acting on data representing text . . . ." term as a separate element. '976 patent, 12:1-29.

Further, the prosecution history does not support Deep Nines's attempt to give a strained interpretation to a claim that is plain when standard rules of grammar are applied. Deep Nines copied claims of McAfee's '122 patent to provoke an interference. Tr. at 16:21-25. Some of the language of the equivalent claim in the '122 patent is deleted in Deep Nines's claim. *Compare* '122 patent, claim 7, 8:10-31 *with* '976 patent, claim 7, 10:35:50; *see also* May 17, 2000 Second Preliminary Amendment, Def. Cl. Const. Br., Ex. 6, 15-17 [Doc. # 112]. Had the '122 patent, claim 7's deleted language ("~~the intrusion detection system further capable of identifying the data representing text as hostile based on the comparison, and~~ acting on the data representing text . . . .") been included in the final clause of the '976 patent, claim 7, it would have been clear, as it is in the '976 patent, claim 13, that "acting on the data" was a function of the IDS. Without that language, and given claim 7's punctuation, the "acting on the data" clause in claim 7 is a separate method step rather than a functional limitation.

The patentee did not attempt to act as her own lexicographer, using the specification to provide a clear special meaning for a claim term. The specification describes at least two different ways that the "acting on the data" step can be performed. One is at '976 patent, 5:18-22:

> This in turn activates communication interface 224 to gateway router 13 to instruct the router to perform some action to choke down operation that will begin to limit the flooding operation to help solve the red line situation.

Compare this example with the one described at '976 patent, 4:12-18:

> If a problem exists, detection/notification server 21 sends a command via modem 16 to modem 17 to configuration server 22 to instruct server 22 to perform an action with respect to gateway router 13. This action serves to address the attack by choking down the offending volume . . . .

In the latter example, the IDS (labeled as "Detection/Notification Server 21" in Figs. 1 and 2, and described at 4:12-13, 44) sends a command to the configuration server 22, which "performs an action with respect to gateway router 13."

In the first example, the router 13 performs an action. In the second, server 22 "performs an action with respect to gateway router 13." Even assuming this means that server 22 sends an instruction and router 13 takes an action, in both cases something other than the IDS is what is "acting on the data."

Although Deep Nines contends that the actions in both examples begin with a command from the IDS, a statement that the IDS sends a command to another component that causes it to take some action to choke off the data is not the same as unambiguously stating that the IDS itself is "acting on the data." The specification does not clearly instruct one of ordinary skill that, in all cases, the IDS is acting on the data. To the contrary, the specification indicates that the "acting on the data" step might be performed by something other than the IDS.

Correction of term by court is not justified

The court may act to correct an error in the patent where no certificate of correction has been issued if: "(1) the correction is not subject to reasonable debate based on consideration of

the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo Indus. L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003). To the extent that Deep Nines would have the court correct the claim's punctuation and wording to make it similar to claim 13—where the "acting on the data" step is subsumed under the IDS element—the preceding discussion, and the patentee's choice to delete certain language in the copied '122 patent claims, strongly suggest a different interpretation of claim 7.

Here, the claim term "acting on the data representing text identified as hostile in order to prevent an attack" consists of a method step in an apparatus claim. This impermissibly mixes more than one class of patentable subject matter and fails to define for the person of ordinary skill in the art what the scope of the claim is. This claim term is therefore indefinite.

## IV. CONCLUSION

Because the claim term "acting on the data representing text identified as hostile in order to prevent an attack" is indefinite, claim 7 is invalid.

So **ORDERED** and **SIGNED** this **4** day of **August, 2010.**

_____
Ron Clark, United States District Judge